No. 12-57232

# United States Court of Appeals
# for the Ninth Circuit

---

In re:
CHINACAST EDUCATION CORPORATION
SECURITIES LITIGATION

COSTA BRAVA PARTNERSHIP III LP, individually and on behalf of all other
persons similarly situated; JAYHAWK PRIVATE EQUITY FUND II LP,

*Plaintiffs-Appellants,*

– v. –

CHINACAST EDUCATION CORPORATION; NED SHERWOOD;
STEPHEN MARKSCHEID; DEREK FENG; DANIEL TSEUNG,

*Defendants-Appellees.*

---

Appeal From The United States District Court For The Central District
Of California, Los Angeles, No. 2:12-Cv-04621-JFW-PLA
John F. Walter, District Judge

## BRIEF FOR DEFENDANTS-APPELLEES

WILLIAM G. McGUINNESS
ISRAEL DAVID
ADAM M. HARRIS
FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed R. App. P. 26.1, Defendant-Appellee Chinacast Education Corporation states as follows:

This party is a non-governmental corporate party with no parent corporation, and all publicly held corporations owning 10% or more of this party's stock are listed below:

None.

Dated: July 19, 2013

Respectfully submitted,

/s William G. McGuinness

WILLIAM G. McGUINNESS
ISRAEL DAVID
ADAM M. HARRIS
FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

STATEMENT OF JURISDICTION ........................................................iv

ISSUE PRESENTED ...............................................................................v

STANDARD OF REVIEW .......................................................................vi

SUMMARY OF ARGUMENT .................................................................1

ARGUMENT ...........................................................................................4

I.    The District Court Properly Applied The Adverse Interest
      Rule In Declining To Impute Scienter to ChinaCast.....................4

CONCLUSION .......................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                             **PAGE(S)**

*Acme Precision Prods., Inc. v. American Alloys Corp.*,
422 F.2d 1395 (8th Cir. 1970) ........................................................... 4

*Alpern v. Utilicorp United, Inc.*,
1994 WL 682861 (W.D. Mo. Nov. 14, 1994) ..................................... 9

*American Soc'y of Mech. Eng'rs v. Hydrolevel*,
456 U.S. 556 (1982) ........................................................................... 7

*Belmont* v. *MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ........................................................ 8 n.6

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ........................................................... iv

*In re Bartoni-Corsi Produce, Inc.*,
130 F.3d 867 (9th Cir. 1997) ............................................................ 7

*In re Cendant Corp. Sec. Litig.*,
109 F. Supp. 2d 225 (D.N.J. 2000) ............................................ 4, 5, 9

*In re Jack Greenberg Court*,
212 B.R. 76 (Bankr. E.D. Pa. 1997) .................................................. 5

*In re JPMorgan Chase & Co. Sec. Litig.*,
2007 WL 4531794 (N.D. Ill. Dec.18, 2007) ............................... 8, 9 n.7

*In re Nat'l Century Fin. Enterprises, Inc.*,
783 F.Supp. 2d 1003 (S.D. Ohio 2011) ............................................. 5

*In re Rent-Way Sec. Litig.*,
209 F. Supp. 2d 493 (W.D. Pa. 2002) ........................................ 7 n.5, 8

*In re Sourcecorp Sec. Litig.*,
2006 U.S. Dist. LEXIS 41381 (D. Tex. June 6, 2006) ....................... 9

**CASES**                                                                          **PAGE(S)**

*In re Turbodyne Tech., Inc. Sec. Litig.*,
 2000 WL 33961193 (C.D. Cal. Mar. 15, 2000)..................................................4

*In re Tyco Int'l, Ltd.*,
 2004 WL 2348315 (D.N.H. Oct. 14, 2004)..................................................7 n.5

*Kaplan v. Utilicorp United, Inc.*,
 9 F.3d 405 (5th Cir. 1993) ...................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 127 S.Ct. 2499 (2007)...........................................................................iv

*USACM Liquidating Trust v. Deloitte & Touche LLP*,
 764 F.Supp. 2d 1210 (D. Nev. 2011) ..................................................5

**OTHER AUTHORITIES**                                  **PAGE(S)**

15 U.S.C. § 78u–4(b)(2)...........................................................................iv

Restatement (Third) of Agency § 5.04 (2006) ..................................................9 n.9

iii

## STATEMENT OF JURISDICTION

Defendants-Appellees agree with Plaintiffs-Appellants' Statement of Jurisdiction.

## ISSUE PRESENTED

Contrary to Plaintiffs-Appellants' assertion, the sole issue presented on this appeal is:

Under the well-established "adverse interest" exception to the rule of imputing knowledge from a corporate executive to the company, did the District Court correctly dismiss a complaint for securities fraud against ChinaCast where the entire premise of the lawsuit is that ChinaCast failed to publicly disclose (before it even knew) that its senior-most officers were engaged in a massive crime in which they pillaged and looted the company of its most valuable assets, and where the only officers or directors aware of the crime were the very individuals who were committing it?

## STANDARD OF REVIEW

Plaintiffs-Appellants omit the following necessary propositions of law in their recitation of the Standard of Review:

A securities fraud claim must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 742-43 (9th Cir. 2008) (quoting 15 U.S.C. § 78u–4(b)(2)). Such an inference "must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499, 2504–05 (2007)).

## SUMMARY OF ARGUMENT

Through this appeal, Plaintiffs-Appellants ("Appellants") ask this Court to overturn the decision of the District Court (Hon. John F. Walter), in which Judge Walter applied a long-standing and common sense principle of law in finding that Appellants failed to allege scienter as against ChinaCast Education Corporation ("ChinaCast" or the "Company") for the non-disclosure of a massive scheme by ChinaCast's former CEO and his accomplices to loot the Company of its most valuable assets, where the only individuals alleged to have been aware of the scheme were the wrongdoers themselves. Under the "adverse interest" exception to the usual rule of imputation, Judge Walter determined that scienter on the part of the CEO as well as one of his co-conspirators, the Company's CFO, could not be imputed to the Company, because Appellants' alleged that these individuals acted entirely adversely to ChinaCast.

ChinaCast is a China-based company in the business of providing college level education to students in China on campus and over the internet, which previously traded on the NASDAQ. ChinaCast, it has now been discovered, was looted and pillaged by its former Chairman and CEO Ron Chan and his cohorts, including former CFO Antonio Sena. ChinaCast's Independent Directors

disclosed the looting scheme as soon as they discovered it.[1]  Nonetheless, Appellants implausibly attempted to transform the primary victims of Mr. Chan's theft into wrongdoers, alleging securities fraud claims against the Company and its Independent Directors on the theory that they violated the federal securities laws by failing to earlier disclose Chan's fraud.

The District Court properly rejected Appellants' attempts to penalize the victims when it dismissed the Complaint with prejudice upon a motion to dismiss made by the Company and the Independent Directors.  In a portion of its Order that is expressly not the subject of this appeal, the District Court correctly found that Appellants failed to adequately allege scienter as against the Independent Directors, who disclosed Chan's looting as soon as they learned of it in the wake of Chan's termination from the Company.[2]  In a portion of the District Court's Order that is the subject of this appeal, the District Court properly found that no scienter

---

[1]     The "Independent Directors" named in the Consolidated Class Action Complaint ("Complaint") are Derek Feng, Stephen Markscheid, Ned Sherwood and Daniel Tseung.  *See* Brief for Plaintiffs-Appellants, May 20, 2013, ECF No. 9 ("App. Br.") at 2; *see also* ER1 n.1.

[2]     The District Court's decision that is the subject of this appeal is the Order dated December 7, 2012, ER1-ER14 ("Order").  Notably, Appellants appeal only from the portion of the District Court's Order dismissing the Complaint as against the Company; Appellants expressly do not appeal from the dismissal of the Complaint as against the Independent Directors.  *See* App. Br. at 2 ("This appeal is pursued only against ChinaCast....Plaintiffs do not challenge the dismissal of claims against the Independent Directors").

2

could be imputed to the Company from Chan and his cohorts, because they had acted entirely adversely to the Company and had conferred no benefit on ChinaCast.

Despite the Independent Directors' continued efforts to salvage ChinaCast in the period since this litigation commenced, the damage wrought by Chan and his associates has been catastrophic. After successfully defending itself in the District Court, ChinaCast now unfortunately lacks the funds necessary to mount with full vigor the defense of this appeal. Nevertheless, the District Court's well-reasoned decision should be upheld for the reasons noted in its Order and as detailed below.

Appellants should not be permitted to once again attempt to take advantage of the havoc wreaked by Mr. Chan for their own gain. The District Court's decision is correct for the reasons stated therein. Nothing in Appellants' brief, which merely raises various arguments rejected below, undermines that decision. Established law — and common sense — makes clear that ChinaCast should not be held liable for securities fraud just because it was robbed blind of its primary assets and disclosed that sad fact as soon as it discovered the massive fraud that was perpetrated on itself. Accordingly, this Court should affirm the Order of the District Court.

## ARGUMENT

I. **The District Court Properly Applied The Adverse Interest Rule In Declining To Impute Scienter to ChinaCast**

The District Court properly held that the wholly self-interested nature of the looting by Chan and his associates barred imputation of their knowledge to ChinaCast.

In particular, the District Court correctly determined that this case falls under a well-established exception to the "principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself." *In re Turbodyne Tech., Inc. Sec. Litig.*, 2000 WL 33961193, at *16 n. 115 (C.D. Cal. Mar. 15, 2000) (quoting *Acme Precision Prods., Inc. v. American Alloys Corp.*, 422 F.2d 1395, 1398 (8th Cir. 1970)); *see* Order at ER12-ER13. Specifically, under the "adverse interest" exception to the general rule of imputation, "the ***knowledge and actions of employees acting adversely to the corporate employer cannot be imputed to the corporation***."[3] *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 225, 232 (D.N.J. 2000). The adverse interest exception follows from black-letter agency law. As the Court in *Cedant* held:

> The rule that knowledge or notice on the part of the agent is to be treated as notice to the principal is founded on the duty of the agent

---

[3]     Emphasis is added throughout unless otherwise noted.

4

to communicate all material information to his principal, and the presumption that he has done so. But the legal presumptions ought to be logical inferences from the natural and usual conduct of men under the circumstances. ***But no agent who is acting in his own antagonistic interest, or who is about to commit a fraud by which his principal will be affected, does in fact inform the latter, and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature***.

*Cendant*, 109 F. Supp. 2d at 232 (quoting *In re Jack Greenberg Court*, 212 B.R. 76, 84 (Bankr. E.D. Pa. 1997)); *see also* Order at ER12.

As the District Court correctly determined, there is no allegation in this case that Chan or his accomplices (including named defendant and former CFO Antonio Sena) "acted out of anything other than their own self-interest, or that their conduct in any way benefitted ChinaCast." Order at ER13. In fact, "courts have typically found that an agent who uses his office to loot corporate assets has acted adversely to his principal." Order at ER13 (quoting *In re Nat'l Century Fin. Enterprises, Inc.*, 783 F.Supp. 2d 1003, 1016 (S.D. Ohio 2011)); *see also USACM Liquidating Trust v. Deloitte & Touche LLP*, 764 F.Supp. 2d 1210, 1219 (D. Nev. 2011) ("The 'classic example' of an agent acting adversely to his principal is ***where an agent embezzles from or loots his principal***"). Therefore, as the District Court properly found, "any knowledge or intent on the part of Chan and his accomplices cannot be properly imputed to ChinaCast. As a result, Plaintiffs have failed to allege scienter against ChinaCast." Order at ER13.

5

Appellants argue that the District Court should have imputed Mr. Sena's intent to the Company because they claim the "the Complaint alleges looting by Chan and [various associates] *but not* defendant Sena, ChinaCast's CFO." App. Br. at 26 (emphasis in original). This is incorrect. Plaintiffs specifically alleged that Mr. Sena had actual knowledge of Mr. Chan's scheme and aided and abetted Mr. Chan by lying to the Company's audit committee so as to not disclose these acts. Complaint, 12-cv-04621-JFW-PLA, ECF No. 42, at ¶ 61. Moreover, as the District Court corrected determined, in their Complaint, Appellants allege no benefit that Mr. Sena's illegal conduct conferred on the Company. *See* Order at ER13 ("In this case, there is no allegation that Chan *or his accomplices* acted out of anything other than their own self-interest, or that their conduct in any way benefitted ChinaCast").[4] Thus, under the adverse interest rule, no scienter may be imputed from Mr. Sena to the Company. *Id.*

---

[4]     Indeed, the Company's public filings (on which the Complaint is based) disclose that Mr. Sena acted along with Mr. Chan to convert Company cash and assets. *See* ER39 (7/16/12 8-K, Ex. A to the Supplemental Declaration of Adam M. Harris, filed with the District Court on November 12, 2012 in further support of motion to dismiss) ("As previously disclosed, on June 19, 2012, [ChinaCast] and several of its subsidiaries had filed a lawsuit … against former chairman and chief executive officer [Chan], *former chief financial officer Antonio Sena* [and others] *alleging that these defendants had converted Company cash and assets and committed various other wrongs against the Company*"). This Court should reject Appellants' attempt at hiding the ball from the Court by premising their Complaint on certain of the Company's disclosures, while self-servingly failing to cite other disclosures clearly indicating that Mr. Sena was an accomplice to Mr. Chan's looting. *See id.*

Appellants further claim that the District Court erred by failing to apply an "innocent actor" exception to the adverse interest rule, by citing various cases outside of the securities context that they claim stand for the proposition that "a corporation, in dealing with a third party, can be found to have authorized conduct by its agents which is detrimental to the corporation." App. Br. at 13 (quoting *Bartoni-Corsi*, 130 F.3d 867, 863 (9th Cir. 1997)); *see also* App. Br. at 13, 17-19 (citing *American Soc'y of Mech. Eng'rs v. Hydrolevel*, 456 U.S. 556 (1982)). However, these cases are inapposite and in no way concerned the question of imputation of scienter in securities cases. *Bartoni-Corsi* addressed the scope of a bank's conversion liability under California law. 130 F.3d at 863. *Mechanical Engineers* addressed the scope of liability under federal antitrust law. 456 U.S. at 559.[5] Tellingly, Appellants do not cite a single case from this

---

[5]     District court cases cited by Appellants (which of course are in no way controlling in this Court) are also distinguishable.  For instance, in *In re Tyco Int'l, Ltd* (App. Br. at 21-22) the court focused on the underlying misconduct and found that the rogue agents' "looting was a part of a larger scheme to artificially inflate the price of Tyco's stock through fraudulent accounting practices" where plaintiffs charged that "Tyco's senior management operated the company as a criminal enterprise in which fraudulent accounting practices were used to generate cash to fund Tyco's acquisition strategy.  The looting, in turn, occurred both to benefit the individual defendants and to create incentives to continue with the accounting fraud."  2004 WL 2348315, at *2, 5 (D.N.H. Oct. 14, 2004).  Here, conversely, there is no allegation that Chan and Sena's looting was part of any scheme to inflate the value of ChinaCast's stock.  Quite simply, robbing a company of substantially all of its assets does not help the company, and certainly does not increase the value of its stock.  *See In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d

Court, any other Circuit Court, or from the Supreme Court that applies an "innocent actor" exception to the adverse interest rule in order to impute scienter from a rogue agent to a corporation in the context of a securities fraud case where the rouge agent's conduct conferred no benefit on the corporation.[6]

Indeed, the fact that the "adverse interest" exception is ever applied in securities cases negates Appellants' arguments, since a securities fraud case in this context will by definition always feature an "innocent" shareholder challenging fraud perpetrated by a rogue agent. *See Rent-Way*, 209 F. Supp. 2d at 522; *In re*

---

493, 522 (W.D. Pa. 2002) (allegations that "fraudulent scheme was devised and carried out in order to raise the [stock price] and in turn, to fund the company's rapid growth through acquisitions…are clearly distinguishable from, for example, ***allegations that a corporate officer misappropriated corporate funds for his or her own use, a clear example of conduct adverse to the interests of the employer***").

[6]     Appellants place great reliance on *Belmont* v. *MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) (App. Br. at 4, 13, 19, 21).  But that case has fundamental differences with this one, and actually supports ChinaCast's position.  There, the Third Circuit found "a genuine issue of material fact as to whether [an employee's] fraudulent statements were made as part of his employment with, ***and for the benefit of [the company], so that those statements might be imputed to [the company]***." *Id.* at 497.  In addition, the court found that imputation may be proper where the record established that certain directors and officers who were not part of the employee's fraud knew of certain underlying facts surrounding the fraud. *Id.*  Here, in contrast, the Complaint failed to allege any benefit conferred on the Company by the CEO and CFO's looting (*supra* at 5-6) and the District Court properly determined that the Complaint had failed to allege scienter on the part of anyone other than the CEO and his accomplices (a determination from which the Appellants do not appeal).  *See supra* at 2 n2.

*JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, at *9 (N.D. Ill. Dec. 18, 2007) (to determine whether to impute scienter from the CEO to the company, court looked "to whether [the] executive's fraud operates to benefit the company or whether the fraud is committed against the company") (quoting *In re Sourcecorp Sec. Litig.*, No. 3:04-cv-3351, 2006 U.S. Dist. LEXIS 41381, at *15 (D. Tex. June 6, 2006));[7] *Cendant*, 109 F. Supp. 2d 225, 232 (D.N.J. 2000) (adverse interest exception applicable to Rule 10b-5 disclosure claims); *Kaplan v. Utilicorp United, Inc.*, 9 F.3d 405, 407 (5th Cir. 1993) (applying adverse interest exception in the context of securities fraud case); *Alpern v. Utilicorp United, Inc.*, 1994 WL 682861, at *3 (W.D. Mo. Nov. 14, 1994) (same).[8]

\*       \*       \*

---

[7]    Appellants argue that *JPMorgan* is distinguishable because there, the Rule 10b-5 claims did not concern a "misleading statement" but rather a "scheme to defraud." Pl. App. Br. at 26. However, such a distinction is immaterial; in *JPMorgan*, the court declined to impute scienter to a company from its CEO where the CEO's alleged "scheme to defraud" conferred no benefit on the company. *JPMorgan*, 2007 WL 4531794, at *9. Thus, *JPMorgan* is contrary to Appellants' contention that a company can be held liable for securities fraud perpetrated by an agent that is entirely "detrimental to the corporation" where the plaintiff is a third-party shareholder unaware of that fraud. App. Br. at 14.

[8]    Plaintiff places great reliance on the Restatement (Third) of Agency § 5.04 (2006). *See* App. Br. at 8, 17, 22-23. However, Plaintiff never articulates how a text published in 2006 has any relevance to the proper interpretation and application of the federal securities laws passed by Congress in the 1930s. The Restatement (Third) of Agency was no bar to the application of the adverse interest rule in the multiple securities cases cited by ChinaCast (*see supra* at 8-9) and it likewise has no application here.

Chan and Sena have already nearly destroyed ChinaCast. This Court should not, contrary to the governing law, help Appellants to inflict further injury on the Company. The District Court properly dismissed ChinaCast from this action, and, respectfully, this Court should affirm that decision.

## CONCLUSION

For all of the foregoing reasons, ChinaCast respectfully requests that the

Court affirm the Order of the District Court in all respects.

Dated: July 19, 2013

Respectfully submitted,

/s William G. McGuinness

WILLIAM G. McGUINNESS
ISRAEL DAVID
ADAM M. HARRIS
FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Defendants-Appellees*

## CERTIFICATION OF COMPLIANCE PURSUANT TO
## <u>FED. R. APP. P. 32(a)(7)(C) AND NINTH CIRCUIT RULE 32-1</u>

I certify that this brief is proportionally spaced, has a type face of 14 points or more, and contains 2,841 words, as generated by Microsoft Word 2007, which was used to prepare this brief.


Dated: July 19, 2013

Respectfully submitted,

/s William G. McGuinness

WILLIAM G. McGUINNESS
ISRAEL DAVID
ADAM M. HARRIS
FRIED, FRANK, HARRIS,
   SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Defendants-Appellees*

## <u>STATEMENT OF RELATED CASES</u>

Defendants-Appellees are not aware of any related cases pending before this Court.

Respectfully submitted,

<u>/s William G. McGuinness</u>

WILLIAM G. McGUINNESS
ISRAEL DAVID
ADAM M. HARRIS
FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Defendants-Appellees*

13

9055677

9th Circuit Case Number(s) | No. 12-57232

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | July 19, 2013 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s William G. McGuinness

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |